FILED
AUG 1 2 2009

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal |
| | ) | ~~Civil~~ Case No. 06-167-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| RASHAUD DEMAR HORSLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Kent S. Robinson
Acting United States Attorney
District of Oregon
Scott M. Kerin
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

       Attorneys for Plaintiff

Susan Russell
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204

    Attorney for Defendant

KING, Judge:

    Defendant Horsley is charged with possession with intent to distribute 50 grams or more

of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  Horsley moves to suppress

all evidence, including the drugs discovered by police officers.  For the following reasons, I deny

the motion.

## FACTUAL BACKGROUND

    The following facts were adduced at an evidentiary hearing:

    Portland Police Officers Passadore and DeLong were driving on SE Clay near SE 92nd on

August 16, 2005 at 5:23 p.m. when they saw defendant Rashaud Demar Horsley parked facing

eastbound on the north curb.  Horsley exited the driver's side of the car and headed toward a

house located at 9271 SE Clay.  As the officers drove towards Horsley, he saw them and quickly

changed direction, walking towards 9259 SE Clay, the house next door.  The officers did not see

him enter either home.

    The police officers ran a records check on the car and discovered it was a rental car.  The

officers parked one block from Horsley's car.  The officers saw Horsley walk out to the car from

one of the residences,[1] look around and get into the driver's seat.  From about four hundred feet

away, which is longer than a football field from endzone to endzone, they watched Horsley reach

---

[1]Officer DeLong testified that he saw Horsley walking away from 9271 SE Clay.

Page 2 - OPINION AND ORDER

into the backseat with his right arm and swing his arm up and down, striking something in the backseat. Horsley then pulled away from the curb without signaling and backed up the entire block on Clay Street driving between 20 and 25 miles per hour in reverse. Horsley then backed into the first driveway on the northeast corner of SE Clay and SE 92nd and paused there. The officers moved the car forward to the stop sign on SE Clay and SE 92nd. As the officers saw Horsley back into the driveway, they say he noticed them parked approximately 60 feet away.[2] Horsley pulled out of the driveway and drove back eastbound on SE Clay at a high rate of speed in the direction from which he had come. Horsley testified that he had been fighting with his girlfriend at the time, Janese Pettyjohn Blue, and he returned to the residence to talk things over again.

The officers activated their lights when they saw Horsley exit the driveway. They followed him down SE Clay until Horsley pulled to the curb without signaling, parking in the same spot where the officers had first seen him. Horsley exited the car, locking it using the automatic lock on the inside of the car, and began walking toward 9271 SE Clay. He heard screeching tires behind him, which he says is the first moment he knew the officers were behind him. Officer Passadore stepped out of the police car and yelled, "Stop." Officer DeLong got out of the police car and yelled, "Stop. We need to see your driver's license." Horsley turned and looked at the officers and asked "Why?" or "What for?" Officer Passadore directed Horsely to stop again, telling him it was a traffic stop. Horsley began to walk faster toward 9271 SE Clay, the house in front of which he was parked.

---

[2]The distance actually measures over 200 feet. Additionally, Horsley testified that he did not back into the first driveway on the corner of SE Clay and SE 92nd Street, but the next driveway to the east.

Page 3 - OPINION AND ORDER

Officers DeLong and Passadore then directed Horsley to stop again, at which point Horsley said, "Fuck you." Horsley began to run toward 9271 SE Clay again.

Horsley went into the house, shutting and locking the door behind him. Officer Passadore was about 10 to 15 feet behind Horsley. He kicked the door twice and knocked the door off of its hinges about one second after Horsley shut the door. The officers entered the house. The officers told the woman they encountered inside, Pettyjohn Blue, to stop talking. Officer Passadore left the house to go around back, leaving Officer DeLong just inside the entryway. Within 20 or 30 seconds, Horsley came out of the back bedroom with his hands up and the officers arrested him. As he was being taken into custody, Horsley asked Pettyjohn Blue to get his keys.

The officers found $1,484 on Horsley during the search incident to arrest.

Officer Passadore then asked Pettyjohn Blue for consent to search the house, which she gave. Pettyjohn Blue owned the house. Pettyjohn Blue told the officers she had known Horsley for two years and that he did not live with her. She testified that she had kicked Horsley out of the house that day, as she had on several other occasions, but he had been living there off and on and paying rent. His address is listed on his ID card as 2000 NE 42nd, in Portland. After receiving consent to search, Officer DeLong searched the house and found car keys and a cell phone lying on the bathroom floor.

In his report, Officer Passadore wrote that he seized the keys to inventory the car before towing it.

Officer Passadore walked to the car and looked inside. Standing outside of the car and looking in, Officer Passadore saw a black garbage bag with a hole in the top of about five to six

Page 4 - OPINION AND ORDER

inches in diameter. According to Officer Passadore, through the hole he could see a small sandwich bag box containing plastic wrapping which was filled with an off-white chalk type substance. Officer Passadore has been a police officer for 11 years and has investigated drug activity for 8 years. Having seen crack cocaine hundreds of times, he testified that he had no doubt that what he was looking at was crack cocaine. A number of things led him to believe that the substance was crack cocaine, including that it was packaged in a plastic bag and that the plastic bag was nestled inside a sandwich bag box, which in his experience is typical of how drugs are packaged.

Horsley testified that the bag did not have a hole in it when he put it in the car. He testified that he had used a brand new garbage bag and had twisted and tied it like tying laces after putting his clothes and phone chargers in it.

Using the keys Officer DeLong provided him, Officer Passadore unlocked the car and removed items from the back seat, including the large black garbage bag. Two plastic bags, located inside the black garbage bag and inside the sandwich bag box, contained crack cocaine and powdered cocaine. After searching the remainder of the car, the police had the car towed.

At the police station, the police advised Horsley of his *Miranda* rights; he admitted the drugs were his.

The police cited Horsley for the misdemeanor crime of attempting to elude by foot, in violation of ORS 811.540. He was later cited with the traffic violations of driving while suspended, in violation of ORS 811.175; illegal backing, in violation of ORS 811.480; and, making an unlawful/unsignaled turn, in violation of ORS 811.335. He was subsequently charged with possession, distribution, and manufacturing of controlled substances.

Page 5 - OPINION AND ORDER

## DISCUSSION

Horsley's motion is targeted at suppressing the drugs the police seized from his car. His argument is, essentially, that his criminal conduct was not serious enough to justify police intrusion into the house and therefore the keys police seized to gain entry to his car were illegally obtained. Since the police illegally obtained the keys, it appears his thinking goes, the contents of the car constitute fruit of the poisonous tree.

I need not reach the issue of whether the officers' intrusion into the house was constitutional. I find that the officers had probable cause to search the car because Officer Passadore had probable cause to believe it contained evidence of a crime. See United States v. Alvarez, 899 F.2d 833, 839 (9th Cir. 1990) (warrantless search of automobile, including trunk, is constitutional so long as search is supported by probable cause). The search may include the trunk and all containers in which there is probable cause to believe that evidence is concealed. Id. "Probable cause exists if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quotation omitted).

Officer Passadore testified that he observed the chalk-like substance when looking in the window from outside the car and I find his testimony to be credible. Based on his training and experience, he believed the substance was consistent with crack cocaine. Accordingly, there was a "fair probability" that crack cocaine would be found in the car.

It is somewhat troubling that Officer Passadore did not simply state in his report that he searched the car pursuant to the automobile exception, or that he did not list this reason as an additional justification for the search. Nevertheless, he testified credibly that officers do not

Page 6 - OPINION AND ORDER

always write in their reports all of the reasons for their actions. He did write in his report, consistent with his testimony, that from outside the car he could see a garbage bag with a hole of approximately five to six inches round, and that he could "see a small box in the hole with plastic wrapping inside. Inside the plastic was an off-white chalk-type substance consistent with rock cocaine." Tr. 90-91.

At the hearing, I questioned whether the officers could see from almost 400 feet away Horsley striking something in the backseat. After considering the exhibits and the testimony in the case, I am no longer concerned about the veracity of the officers' testimony as to their observations.

If the officers have probable cause to search the car, they also may enter the car without a warrant. See Washington v. Chrisman, 455 U.S. 1, 11 n.4 (1982) (White, J., dissenting) (comparing plain view and automobile exception; automobile exception "justifies a warrantless entry into the automobile to seize contraband in plain view inside the car."). Furthermore, although there is a dearth of caselaw on the issue, I think it must be the case that the officers may use any reasonable means to enter the car. For example, the officers could have obtained another set of keys from the rental agency, forced entry into the car, or used a slim-jim. See, e.g. Dalia v. United States, 441 U.S. 238, 258 (1979) (officers occasionally must damage property in executing search warrant). Accordingly, the officers' use of the purportedly illegally obtained keys is irrelevant.

///

Page 7 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, defendant's Motion to Suppress Evidence (#45) is denied.

Counsel should confer and propose a trial date to the Court by August 21, 2009.

IT IS SO ORDERED.

Dated this _____ 12 _____ day of August, 2009.

Garr M. King
United States District Judge